### Frank C. Smith et ux. v. Julius R. Norton et ux.

Decided December 21, 1910.

**1.—Trial—Dispatch of Business—Discretion of Judge.**

In an order to expedite the trial of cases, to prevent unnecessary delays, and to properly dispense justice between litigants, a large discretion must be confided to a district judge in enforcing the rules and regulations for trials, and his action in such matters will not be interfered with unless a clear abuse of discretion is shown.

**2.—Same—Rule Applied.**

In a suit in a District Court upon vendor's lien notes, when the case was called the defendants were granted thirty minutes in which to prepare an application for continuance because of sickness of one of the defendants; the answer of the defendants then on file consisted of a general demurrer and general denial. After the expiration of an hour, the attorneys for defendants failing to report or return to the court room, the court proceeded to hear the evidence and render judgment for the plaintiff. Held, there was no abuse of discretion by the trial judge.

**3.—Promissory Note—Attorney's Fee—Pleading and Proof.**

In a suit upon promissory notes it was alleged that the defendants, the makers of the notes, had agreed in the notes to pay ten per cent on principal and interest as attorney's fee if the notes were placed in the hands of an attorney for collection after maturity or if collected by suit; that the notes were due and unpaid, and after maturity had been placed in the hands of an attorney for collection, and that suit had been instituted thereon by said attorney. The proof showed that the plaintiffs had agreed to pay their attorney the ten per cent of the principal and interest for his services, and that the services were reasonably worth that sum. Held, the petition was at least good on general demurrer, and sufficient to admit proof of the agreement as to attorney's fee.

**4.—Same.**

Where it is stipulated in a note that if the note is placed in the hands of an attorney for collection after maturity, or if collected by suit, the maker would pay ten per cent on the amount thereof as attorney's fee, it is not necessary for the petition to allege that suit has been brought on the note.

**5.—Same—Cases Criticised.**

In the case of Rutherford v. Gaines, 103 Texas, 263, the Supreme Court disclaims that it had approved the doctrine announced in the case of Elmore

v. Rugely, 48 Texas Civ. App., 456, in the matter of pleading and proving a stipulation in a promissory note for attorney's fee.

**6.—Appeal—Conflict Between Statement of Facts and Bill of Exception.**

The certificate of a court stenographer to his notes of the evidence adduced on a trial, will not be given greater verity than a statement of the trial judge in his qualification of a bill of exception; and where there is a conflict between the two, the statement of the judge will control.

Appeal from the District Court of Bexar County. Tried below before Hon. A. W. Seeligson.

*Guinn & McNeill,* for appellants.—The plaintiff having failed to allege any contract or agreement obligating him to pay his attorney the amount of the fees stipulated in the notes sued on, a judgment for such attorney's fees is erroneous. Young v. State Bank, 117 S. W., 476; Smith v. Childs, 115 S. W., 598; Elmore v. Rugely, 107 S. W., 151; Bolton v. Gifford, 100 S. W., 210; Moore v. Brown, 89 S. W., 310.

*James Routledge,* for appellees.

FLY, ASSOCIATE JUSTICE.—Appellees sued appellants on six certain promissory notes to recover the principal, interest and attorney's fees due thereon, and to foreclose a vendor's lien on certain land. It was alleged that it was provided in the promissory notes that if there was a failure to pay off either of them when it became due, the others should become due and payable at the option of the holder, and that two of the notes became due on March 23, 1909, before the suit was instituted, and that appellees, the holders of the notes, had exercised their option and declared all of the notes due and payable. A writ of injunction was applied for to restrain appellants from destroying timber on the land and from removing cordwood therefrom, and it was prayed also that a receiver be appointed to take charge of the land.

Appellants answered by general demurrer and general denial, and pleaded specially that the property was worth more at that time than when they bought it, and that they would pay the debt if given a little more time, and that they were about "to close a deal at very advantageous prices," but that a claim for injunction and the prayer for a receiver had destroyed the prospect.

The receivership prayed for was denied, and a temporary injunction was granted on May 27, 1909, and was dissolved on June 2, 1909. Judgment was rendered in favor of appellees for $13,860.58, with eight per cent interest from date of judgment. Ten per cent for attorney's fees is included in the $13,860.58 for which judgment was rendered. The vendor's lien was foreclosed on the land.

The findings of fact of the trial judge are adopted by this court. After fully describing the notes, which provided for attorney's fees, and the deed from appellees to appellants, in which the vendor's lien

Vol. LXIII Civil-27.

was reserved on 616.8 acres of land to secure the payment of the notes, the court found:

"That J. R. Norton is the owner and holder of said notes; that interest was paid on all of said notes up to September 23, 1908; that on March 23, 1909, a half-yearly installment of interest on all of said notes and two principal notes of $2000 each became due and payable, and that Frank C. Smith failed to pay the same although duly requested to do so; that the said J. R. Norton exercised the option which was given him in said notes and in said deed, and declared all of said notes, both principal and interest, due and payable, and placed the same in the hands of James Routledge, who is an attorney at law in the city of San Antonio, Bexar County, Texas, for collection, and instructed the said James Routledge to bring suit on the same to collect the same, and employed the said James Routledge to bring and prosecute such suit to its termination, and agreed and promised to pay the said James Routledge the sum of ten (10) per cent of the principal and interest due and to become due on all of said notes, as attorney's fees for his services in bringing and prosecuting said cause of action.

"That the sum of ten (10) per cent on the principal and interest of all of said notes is a reasonable and fair attorney's fee for the bringing and prosecuting of said cause of action on said notes, and is the reasonable and fair value of the services of the said James Routledge in bringing and prosecuting the said cause of action; that by placing the said notes in the hands of the said James Routledge and instructing him and employing him to bring and prosecute this cause of action to collect said notes, the said J. R. Norton became bound to pay unto James Routledge the reasonable and fair value of the services of the said James Routledge in bringing and prosecuting said cause of action."

It appears from the judgment of the court that this cause was called for trial on November 24, 1909, and appellees announced ready for trial, and appellants thereupon filed in court their answer, consisting of a general demurrer and general denial, in lieu of their original answer filed on June 2, 1909, and thereupon left the court room temporarily, and, no jury fee having been paid, the case proceeded to trial without a jury.

In a bill of exceptions it appears that appellants were granted thirty minutes in which to prepare an application for a continuance on account of the sickness of one of the defendants, and they retired to prepare it, and the court, after waiting an hour, and appellants' attorneys not returning, proceeded to hear the evidence and render judgment for appellees. That action of the court is made the subject of complaint in the first assignment of error. The proposition is: "The court having granted the defendants' counsel a limited time within which to prepare a formal motion for continuance, should not peremptorily call a trial of the case in their absence, unless there is reason to believe that they were wilfully delaying the court and were not in good faith engaged in preparing such motion." At the time that appellants went out to prepare the application for continuance they had pleaded no defense, their answer

consisting merely of a general demurrer and general denial. The court had no notice, therefore, of any meritorious defense to the suit on promissory notes secured by vendor's lien. They had asked for only thirty minutes in which to prepare the application, and after double that time had .expired and they had not returned, we can not say that the trial court abused its discretion in proceeding with the trial. In order to expedite the trial of causes, to prevent unnecessary delays, and to properly dispense justice between litigants, a large discretion must be confided to the district judge in regard to the enforcement of rules and the regulation of times for trials; and the actions of the judge within the premises will not be interfered with unless there has been a clear abuse of his discretion in such matters. We can not say that such discretion was abused in this instance. The court exercised the power confided in it to protect itself. against an unnecessary delay in the conduct of the business of the court.

An examination of the application for a continuance shows that appellants were given advantage of every matter which Frank C. Smith would have been permitted to swear to had he been present. The amounts paid on the notes, to which he would have sworn, were allowed as credits in the judgment; and the testimony as to other liens on the property was neither pertinent nor proper; and there could have been no damages arising from the application for a receiver, which was denied; nor from the temporary injunction which was in effect only six days. There were no pleadings upon which the testimony could rest, because appellants had made no answer except a general demurrer and general denial.

It is candidly admitted by appellants that no express rule of law was violated by the court in rendering the judgment, but it is intimated that trial courts have not been diligent and prompt in dispatching business. Promptness in the execution of business and a stern enforcement of law is highly commended, but they seem to think that this is a sporadic case of diligence on the part of the court, of which they are the victims. If there has been a lack of promptness on the part of the trial court and a laxness in the enforcement of discipline, let us hope that a turn for the better had been made, and that this is not a sporadic case but the beginning of a system of diligence and promptness in the dispatch of business. We do not wish it understood that there is any intimation on the part of this court that the trial court has not been active and vigilant in the performance of his duties, because we have no evidence of other than the energetic, faithful, intelligent and prompt performance of the duties laid upon him by the law.

It is alleged in the petition that appellants had agreed in each of the notes to pay ten per cent on principal and interest for attorney's fees if the notes were placed in the hands of an attorney for collection after maturity or if collected by suit, and that the notes had become due, and after their maturity were placed in the hands of an attorney for collection and that suit had been instituted to collect the amount of the notes by said attorney. The proof showed that appellees had agreed

to pay their attorney the ten per cent of the principal and interest for his services, and that they were reasonably worth that sum. The petition was at least good on general demurrer and was sufficient to admit proof of the amount appellees agreed to pay their attorney for his services in prosecuting the suit. In the case of Maddox v. Craig, 80 Texas, 600, the Supreme Court, speaking about an allegation in regard to attorney's fees, held: "Under the rule of practice adopted by this court the petition would be good upon general demurrer (Rule for District Courts No. 17) and hence, as to the allegation of a promise to pay attorney's fees, sufficient to support a judgment by default."

Appellants have cited several decisions by Courts of Civil Appeals in which it seems to be held that plaintiffs must not only allege but prove the employment of counsel and the amount agreed to be paid them on the institution of suits and the reasonable value of an attorney's services, in cases where attorney's fees are provided for in promissory notes. This court does not agree with those decisions in their entirety, notably with the decision in the case of Elmore v. Rugely, 107 S. W., 101, and has heretofore certified the question of disagreement to the Supreme Court, as, in compliance with law, it was compelled to do; still, there is nothing in that or the other decisions that seeks to overturn the well settled rule that proof will supply the lack of allegation in a pleading which is good as against a general demurrer. In fact, in the Elmore case while there are general expressions as to the necessity of alleging and proving the amount of fees agreed to be paid an attorney, still, in summing up, allegation and proof are connected disjunctively. There is the same uncertainty in the case of Young v. State Bank, 54 Texas Civ. App., 206 (117 S. W., 376) ; but, after attempting to show that its decision was not in conflict with numerous decisions of the Supreme Court, the Court of Civil Appeals of the Sixth District seems to base its opinion on the failure to prove the amount of the attorney's fees, for it says: "In the case at bar no effort seems to have been made to prove the amount of fees paid or agreed to be paid the attorney in bringing this suit, further than the introduction in evidence of the note sued on." The objections as to attorney's fees passed on in that case were that "neither the pleadings nor the evidence justified such a recovery." The Supreme Court expressly disclaims that it has approved the doctrine of the two cases cited or any others holding like views. Rutherford v. Gaines, 103 Texas, 263 (126 S. W., 261).

We hold that, in the absence of a special exception, the petition was sufficient to allow the introduction of evidence as to the amount appellees had agreed to pay their attorney and as to the reasonableness of the fee. We could go further and hold that where it is stipulated in a note that "if this note is placed in the hands of an attorney for collection after maturity, or if collected by suit, I agree to pay ten per cent additional on the principal and interest then owing thereon, as attorney's fee," as was done by the notes sued on herein, "it was not necessary for the petition to allege that suit had been brought on same, for that fact was apparent and established by the proceeding itself,"

as was held by this court in Adams v. Bartell, 46 Texas Civ. App., 349,. (102 S. W., 779), and in which a writ of error was denied by the Supreme Court. A reference to the briefs shows that the first and second assignments of error referred to in the opinion raised the issue that attorneys' fees can not be recovered unless "it is alleged in the pleading and proven upon the trial that such provisions in the note as to payment of attorney's or collection fees have been complied with." The point was brought directly before the Supreme Court in the application for a writ which was denied. That opinion was delivered on May 8, 1907, and the writ was refused on October 16, 1907, about three months before the opinion was delivered in the case of Elmore v. Rugely, which is apparently in conflict with it.

To one of the bills of exception are appended questions and answers which a deputy official stenographer certifies was all of the testimony adduced upon the trial of this cause, and appellants desire that this court should hold, as there is no mention in the testimony of evidence on the subject of attorney's fees, that there was no testimony upon which the court could have its finding. However, as a qualification of the bill of exceptions, the court states: "I do know, however, notwithstanding the fact that the matter does not appear in the stenographer's notes, that when the witness Norton was testifying, I asked him myself whether or not these notes had been placed in the hands of Routledge for collection, and the said Norton testified that he had placed the notes. in the hands of Routledge, an attorney at law, for collection, and instructed him to bring suit on said notes, and had agreed and promised to pay the said Routledge the sum of ten per cent (10%) on the principal and interest of the notes as collection fees; and the said Norton also testified that ten (10%) per cent was a reasonable fee for the bringing of this suit." That declaration of the district judge and his finding to that effect can not be set aside by a stenographer's notes. The notes do not contain copies of the promissory notes nor of the deed, and clearly do not show all the testimony that was introduced on the trial. A certificate of a stenographer will not be given greater verity than the acts of a judge in the trial of a case. The bill of exceptions with stenographer's notes appended can not be used to impeach the findings of the judge, as they have not received the sanction of the judge, but are pronounced inaccurate by him. The judgment is. affirmed.

*Affirmed.*

Writ of error refused.