FRANK LOWERY, APPELLANT, v. J. E. FULLER, RESPONDENT.*

Kansas City Court of Appeals.    April 5, 1926.

*Corpus Juris-Cyc References: Bills and Notes, 8CJ, p. 387, n. 57, 58, 60; Contracts, 13CJ, p. 521, n. 18; Corporations, 14CJ, p. 684, n. 18; Debt, 17CJ, p. 1377, n. 90, 91; Guaranty, 28CJ, p. 943, n. 35.

*A. G. Knight* for appellant.

*Ed. C. Hyde, Laurence M. Hyde* and *Ira B. Hyde* for respondents.

ARNOLD, J.—This is an action in damages based upon an alleged violation of the terms of a contract for the sale of stock of the Fuller Lumber Company, a corporation.

The Fuller Lumber Company, a Missouri corporation, was operating six lumber yards in the States of Missouri and Iowa. In 1921, J. E. Fuller was president, Frank Lowery (plaintiff herein) secretary, and Roy Miller, treasurer of said company, the three owning all the capital stock of the concern consisting of 1250 shares. Fuller owned 850 shares, Lowery 250 and Miller 150. Lowery had charge of the books of the company and did part of the buying and auditing. Lowery and Fuller lived at Princeton, Mo., where the company maintained a yard and the principal offices of the company. Roy Miller lived at Trenton and managed a yard which the company maintained at that place. As shown by the record, Fuller received a salary of $2400, Lowery $3,000 and Miller $1800 per year for their services.

On March 24, 1921, Fuller and Lowery entered into a written contract by the terms of which Fuller sold Lowery the 850 shares of the capital stock of the company owned by him, for the price and sum of $185 per share, payment to be made as stipulated. The contract is not long and therefore may be set out in full herein, as follows:

"Between J. E. Fuller of Princeton, Mo., party of the first part and Frank Lowery of Princeton, Missouri, party of the second part, witnesseth:

"Party of the first part is the owner of 850 shares of the capital stock of the Fuller Lumber Company, a corporation of Princeton, Missouri and the said Frank Lowery, a second party, agrees to buy or procure purchasers thereof of the said 850 shares of stock of above named at $185 per share upon the following terms and conditions:

"That payment shall be made on the said 850 shares as follows:

"There shall be $85 per share paid in cash or good bankable notes bearing eight per cent. per annum interest due in one year or less. The said J. E. Fuller, first party, agrees to carry balance of the purchase price for a term of two years as evidenced by promissory notes on the collateral form of old Bank of Mercer county, due on or before two years from date with eight per cent. per annum interest from date until paid and with the above-mentioned stock as security.

"It being understood and agreed that outside of the regular yard indebtedness for merchandise bought and not paid for the said J. E. Fuller has incurred no indebtedness against said corporation, except salaries and wages.

"The sum of thirty thousand dollars is hereby paid on the above sale, receipt of which is hereby acknowledged. It being understood and agreed that parties hereto have thirty days in which to complete said sale, and if said second party fails or refuses to complete said sale within thirty days, said sum to be retained by first party as liquidated damages.

"Said Fuller agrees that he will not directly or indirectly engage in the retail lumber business in any county in which a yard of the Fuller Lumber Company is at present located.

"As a total at least half of the $85 per share to be paid in cash within thirty days.

"It is understood and agreed that the said Fuller Lumber Company owes income tax of $6150 shown by their 1920 report. Any additional assessment shall be paid by present stockholders. J. E. Fuller, Frank Lowery and Roy Miller in proportion to number of shares owned by each of them.

"Signed in duplicate this 24th day of March, 1921.

"(SIGNED)     "J. E. FULLER
              "FRANK LOWERY."

From the second paragraph in the contract it is readily seen that Lowery and such others as he might procure to take stock were purchasing all of J. E. Fuller's holdings in the corporation. It appears the company was prosperous and paid substantial dividends. As part of his dividend for the year 1920, Lowery accepted a note of one W. L. Collings for $1950 which had been given to the company

for a bill of lumber purchased. The said note was dated June 1, 1920, due December 1, 1920, and was endorsed to Lowery as follows:

"To Frank Lowery

Fuller Lumber Company

By J. E. Fuller."

It further appears that in 1921 Lowery and Miller (brothers-in-law) became dissatisfied and Miller resigned and opened an opposition lumber yard in Trenton, Mo. Thereupon Lowery refused to have anything to do with the Company's yard in Trenton and Fuller personally took charge of it and on March 24, 1921, the contract above set out was entered into.

As part of the $30,000 required by the terms of the contract to be paid upon its execution, Lowery delivered to Fuller the $1950 Collings note, on which he made the following endorsement:

"Payment guaranteed, 3-28-21

Frank Lowery."

On April 8, 1921, Fuller collected the interest to that date on the said note and $500 on the principal and endorsed the note without recourse to the Fuller State Bank of Princeton, Mo., of which he was president. Thereafter the bank collected from Collings the interest and an additional sum of $200 on the principal.

In 1922, Collings was declared a bankrupt and the Fuller State Bank brought suit against Lowery on his endorsement and guaranty of the Collings note. Lowery filed a demurrer to the petition in that suit and the bank thereupon filed an amended petition embracing the facts just stated and alleging that Lowery assigned said note after maturity to Fuller for a consideration of $2077.33, guaranteed payment, waiving demand notice, protest and notice of non-payment and agreed to extension of time without notice; that Fuller endorsed the note without recourse to the bank, after maturity, for a consideration of $1556.66. Lowery's answer to the petition was a general denial. A judgment was rendered in favor of the bank and against Lowery for $1379.16 and $75 attorney's fee, and on November 7, 1922, Lowery paid the judgment.

As stated in the contract between Fuller and Lowery for the sale of the stock, the Fuller Lumber Company owed the U. S. Government a balance on its 1920 income tax of $6150. The company's return showed that it owed the U. S. income and excess profit tax in the sum of $8207.70; but before the execution of the contract now involved, and when the return was sent to the collector of internal revenue, a payment of $2057.70 was made, thus leaving a balance of $6150 as above indicated.

The record discloses that at the date of the contract the Missouri state income tax for 1920 in the sum of $483.16 was not paid. In 1922, there was an additional assessment of $745.71 paid by the corporation

which, in the meantime, had changed its corporate name to the Lowery-Miller Lumber Company. Thereafter Lowery procured an assignment from the other holders of stock in the corporation of such rights as it was claimed they had against Fuller, under the contract, and this suit followed.

The petition alleges the formal matter above stated and charges that the Fuller Lumber Company thereby became and was liable for all the amounts so paid by plaintiff, and that plaintiff was compelled to pay the Fuller State Bank and that said note and endorsement constituted a liability and outstanding obligation of said company to plaintiff.

It is further alleged in the petition that by the terms of the contract entered into between Frank Lowery and J. E. Fuller, aforesaid, said Fuller agreed that outside the regular yard indebtedness for merchandise bought and not paid for, the said Fuller, on behalf of said company, had incurred no indebtedness against said company except for salaries and wages; that it was further understood and agreed that the said Fuller Lumber Company owed the U. S. Government a balance of $6150 based upon the 1920 return, and that any additional assessment for income tax should be paid by the then stockholders of the Fuller Lumber Company, to-wit, J. E. Fuller, Frank Lowery and Roy Miller, in proportion to the number of shares owned by each; that at the date of said contract, in addition to the $6150 owing to the U. S. Government by the Fuller Lumber Company there was an additional assessment of $745.71 due the U. S. Government for the year 1920 and a State Income Tax for the year 1920, of $483.13, all of which the Fuller Lumber Company, after the purchase of the stock aforesaid, was compelled to, and did, pay and which by the terms of said agreement, the said J. E. Fuller was obligated to pay to plaintiff and others purchasing said stock his proportionate share, to-wit, 850/1250ths of said total sum of $1228.84, or the sum of $835.46, which said Fuller refused to pay; and that said Fuller further refused to pay the judgment, note and attorney's fee.

Judgment is sought herein for the amount of his proportionate share of the judgment referred to, together with the amount of the income tax paid as alleged in the sum of $833.46, or a total sum of $1849.62, together with interest and costs.

The note in question is filed as an exhibit and is in words and figures as follows:

"Princeton, Missouri, June 1, 1920.

"1950.00

"Six months after date; I, we, or either of us, as principals promise to pay to Fuller Lumber Company or order Nineteen Hundred Fifty and No/100 Dollars.

"For value received, with interest thereon from date at the rate of eight per centum per annum, which shall be due and paid annually and if the interest is not paid annually it shall be added to and become a part of the principal and bear interest at the same rate, and which cost of collection including an attorney fee, in case payment shall not be made at maturity. The makers, endorsers and guarantors hereof hereby waive demand, notice, protest, and notice of nonpayment, and agree to the extension of time of payment without notice.

"Payable at Mercer County Trust Company, Princeton, Mo.

"No. ————— due Dec. 1, 1920.

"(Endorsements on the back thereof)

"To Frank Lowery

"Fuller Lumber Company by J. E. Fuller, Pt.

"Payment guaranteed 3-28-21 Frank Lowery

"Without recourse J. E. Fuller

"April 8th, 1921 cash 584.25

"April 8th, 1921 balance due $1500.00

"Interest paid to Dec. 10th, 1921

"Dec. 10th, 1921 cash $200.00."

Defendant demurred to the petition on the ground that it failed to state a cause of action and because it shows on its face that there has been a former adjudication of all matters and things therein alleged in relation to the note involved. The demurrer was overruled and defendant filed an amended answer.

On application of defendant a change of venue was granted to the circuit court of Daviess county and by agreement of parties the cause was transferred to the circuit court of Livingston county where it was tried to the court without the aid of a jury.

In his amended answer defendant admits (1) the alleged corporate status of the Fuller Lumber Company (2) that he was president of said corporation and owned 850 shares of its capital stock and that plaintiff and Roy Miller owned the remaining 350 shares thereof; (3) the execution and delivery of the $1950 W. L. Collings note as alleged; (4) the assignment of said note to plaintiff by the Fuller Lumber Company, president, for value received and that after its maturity plaintiff, for value received, endorsed and guaranteed payment thereof to defendant on March 28, 1921; (5) that W. L. Collings made payments on said note as alleged in the petition; (6) that defendant sold said note to the Fuller State Bank; (7) that the Fuller State Bank brought suit against plaintiff on said note and secured a judgment thereby in the principal sum of $1397.31 and attorney's fee of $75 and costs assessed at $10.10, and that plaintiff has paid same; (8) admits signing the contract as alleged in the petition. These admissions are followed by a general denial.

As further answer, defendant specifically asserts that at the time of the signing of the contract dated March 24, 1921, he had not incurred any indebtedness against the Fuller Lumber Company, outside the regular yard indebtedness for merchandise bought and not paid for, and for salaries and wages; that the said W. L. Collings note was not at that time, or at any time, and is not now, an indebtedness incurred by defendant against said corporation; that by the sale, assignment and guaranty, and delivery of said note to defendant, plaintiff assigned and transferred to defendant and subsequent holders thereof, all rights, powers and remedies, if any he had, against defendant, or any other person or corporation for the payment of said note, or to reimburse plaintiff for such payment under the terms of the said contract; that the suit by the Fuller State Bank against plaintiff on his guaranty of the Collings note, judgment thereon and payment thereof by plaintiff is *res adjudicata* of all matters in controversy herein, relative to said note; that defendant J. E. Fuller was privy to said action and judgment and to all proceedings for the collection of said note, as an endorsee and endorser thereon, and that by said action all the issues involved in the present suit were fully and finally adjudicated.

The answer sets out in full the petition in the suit of the Fuller State Bank v. Lowery, the defendant's demurrer thereto and the action of the court in overruling said demurrer. The answer further avers that on March 24, 1921, at the time the alleged contract was executed the Fuller Lumber Company had made and filed its return for Federal Income and Excess Profit Tax for the year 1920 and had paid the first installment thereon; that at the time said contract was executed the balance due was $6150, and that defendant agreed that in case there should be an additional assessment for Federal Income Tax for the year 1920 against the Fuller Lumber Company above the said $6150, defendant would pay his proportionate share thereof; that there has been no such additional assessment for said year and that said balance of $6150 is all that the company has paid. The answer specifically denies that defendant agreed to pay any amount whatever of the State Income Tax of the company for the year 1920, or any other year; denies that he agreed to pay any amount whatever for Federal Income and Excess Profit Tax for the said company, or any additional assessment which might be made therefor for any other year than 1920; and further denies that there has been any additional assessment for Federal Income Tax made on said Fuller Lumber Company for said year 1920, or any other year prior to the execution of said contract. Upon the pleadings thus made, the cause was tried to the court without a jury.

The finding and judgment of the court were against plaintiff and for defendant on the indebtedness set forth in the petition, claimed

to be due from defendant on the Collings note. And the court further found for plaintiff and against defendant on the items of Federal and State Income Tax set forth in plaintiff's petition as due from defendant to plaintiff, in the total amount of $1228.84, defendant's proportionate share thereof being 850/1250ths or the sum of $835.51, which, together with six per cent interest from the time of demand brings the total sum to $910.70.

Both parties filed motions for new trial directed against that part of the judgment and finding of the court against each, but these motions were overruled. Defendant also filed a motion in arrest which was overruled and the judgment previously rendered was pronounced final. Thereupon both parties appealed to this court and have filed herein a joint abstract of the record.

In order to maintain the regular order, we shall first consider plaintiff's appeal from that part of the judgment holding plaintiff is not entitled to recover on the Collings note. In this respect there are five assignments of error (which may be considered as one) charging generally that the court erred in finding for defendant on said item because the endorsement of defendant for the Fuller Lumber Company to plaintiff upon the Collins note created a liability on the part of the Fuller Lumber Company which was outstanding at the time the contract between plaintiff and defendant was executed and was not a regular yard indebtedness for merchandise bought and not paid for and was not salary and wages; that the court erred in not including in its finding and judgment the amount of the judgment rendered in the case of the Fuller State Bank against plaintiff, to-wit, $1379.16 and $75 attorney's fees, together with six per cent. interest from September 12, 1922, in addition to the finding for plaintiff on the unpaid income taxes. Plaintiff bases his argument on that clause in the contract which reads:

"It being understood and agreed that outside of the regular yard indebtedness for merchandise bought and not paid for, the said J. E. Fuller has incurred no indebtedness against said corporation, except salaries and wages."

It is argued that by this clause Fuller guaranteed that there was no outstanding indebtedness against the corporation to diminish the value of the stock purchased from him by plaintiff and his associates other than the regular yard indebtedness for mercandise bought and not paid for, and salaries and wages; that defendant Fuller, owning a majority of the stock, had the power to do as he pleased with the business of the company, and that in contracting for the sale of said stock, the clause "the said Fuller has incurred no indebtedness against said corporation" etc., was used in the sense of expressing that the corporation through Fuller had incurred no indebtedness against itself except the regular yard indebtedness for merchandise bought

and not paid for, and salaries and wages. Thus it will be seen that the solution to this question will lie in the proper construction of the contract; and this must be based upon the intent of the parties.

In Thompson v. Lindsay, 242 Mo. 53, 72, the Supreme Court said: ''A proper construction, of a contract arises on the whole subject-matter—parties, their relations to each other, the object to be subserved by the contract, and the language all considered.

It is of record that the Collings note was accepted by plaintiff in part payment of a dividend due him on his stock in the company and that the note was endorsed to him by J. E. Fuller, president, for the company. Plaintiff insists that such endorsement created an indebtedness and liability of the company to plaintiff and lessened the value of the stock; and that defendant, therefore, is liable for his proportionate share of the unpaid balance of the Collings note, under the contract.

Against this line of argument and construction of the contract, defendant declares the corporation's endorsement was only a contingent liability and not an indebtedness. It is the rule that a sum payable upon a contingency is not a debt which is an unconditional promise to pay a fixed sum at a specified time and does not become a debt within the meaning of the law until the contingency has happened. The words *debt* and *indebtedness* are not synonymous with the word *liability*. [Saleno v. Neosho, 127 Mo. 627.] Here the contingency was the failure of Collings to pay the note. The record shows the note was past due when it was endorsed to plaintiff and that after its endorsement by plaintiff to defendant with a guaranty of payment and from defendant without recourse to the Fuller State Bank, Collings had paid the interest and made substantial payments on the principal, so that the amount of the liability incurred depended upon how much Collings failed to pay. In the construction of the contract, we must hold that the corporation's endorsement cannot be said to have been an indebtedness within the meaning of the law at the time the contract was executed, since it was not then unconditional and fixed as to time and amount.

Defendant insists, and we think properly, that when plaintiff endorsed the Collings note to defendant, he thereby transferred all rights and powers provided in the instrument itself and other rights growing out of and connected with the transfer of the paper, together with the right of recourse against all prior parties who are liable on the paper. This is the general rule (8 C. J. 387, par. 573) and it is applied, though indirectly, in Layton v. Hough, 169 Mo. App. 213, 228. Further, the rule is that a contract of guaranty passes with the transfer of a note and as an incident to it, although contained in a separate agreement. [28 C. J. 943, sec. 90.] It necessarily follows that if the contract between Fuller and Lowery was, in fact, a contract of guaranty of the payment of the note, as is contended by plaintiff,

in applying the above rule it must be held that all rights and remedies which plaintiff had by reason thereof for the collection of the note from anyone, including Fuller, passed to defendant when plaintiff transferred the note to him. That is, plaintiff had no further interest in the note, or any guaranty thereof after he endorsed it to defendant. We therefore hold that the judgment of the court as to this phase of the case was proper and that plaintiff's appeal therefrom is without substantial merit. The judgment of the trial court thereon is sustained.

In considering defendant's appeal from the judgment wherein defendant is held liable for the payment of the Federal and State Income Tax, it is proper first to call attention to the section of the contract touching this point, as follows:

"It is understood and agreed that the said Fuller Lumber Company owes income tax of $6150 shown by their 1920 report. Any additional assessment shall be paid by present stockholders. J. E. Fuller, Frank Lowery and Roy Miller in proportion to number of shares owned by each of them."

This clause is the bone of contention in defendant's appeal and it is insisted that this clause covers only additional Federal Income Tax for the year 1920; that it applies only to additional assessments based upon that year's income and under a proper construction defendant may not be held to pay the item of $745.71 being a Federal Excess Profit Tax for the year 1919, and that the item of $483.18, State Income Tax, was not an "additional assessment" the return therefor having been made prior to the signing of the contract.

A proper construction of the clause of the contract referring to income tax is necessary for a proper determination of the appeal on this point. As a first step in construing this clause, we shall separate it into paragraphs, as follows: (1) "It is understood and agreed that the Fuller Lumber Company owes income tax of $6150 as shown by their 1920 report." This would seem to be a complete sentence and clear and unequivocal in meaning. (2) "Any additional assessment shall be paid by present stockholders, J. E. Fuller, Frank Lowery and Roy Miller, in proportion to the number of shares owned by each of them." We think this clause susceptible of only one meaning, to-wit, that the defendant agreed to pay his proportionate share of any assessment against the company, not included in the $6150. Obviously this was the view of the trial court as expressed in the judgment rendered. The item of $745.71 Federal Excess Profit Tax was held by the court to be an assessment additional to the $6150 mentioned in the first clause of the paragraph. The same is true of the item of $483.18 State Income Tax. We hold the trial court was not in error in so construing the contract in respect to this matter. We fail to find reversible error of record and the judgment as a whole is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.